**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

**REGINALD J. DOCKERY, on his own behalf,
REGINALD J DOCKERY AND REBEKAH
DOCKERY, as guardians of K.C.D.,**

      **Plaintiffs,**

      v.                                          Case No.  05-2067-JWL

**UNIFIED SCHOOL DISTRICT NO. 231, and
TIM YOHO,**

      **Defendants.**

**MEMORANDUM AND ORDER**

Reginald Dockery, on his own behalf, and Mr. Dockery and his wife, Rebekah Dockery, as guardians of K.C.D., their minor son, filed this action alleging various claims of employment and racial discrimination against Unified School District No. 231 ("the school district") and Tim J. Yoho, Ph.D., director of human resources for the school district. Specifically, in Count I of the first amended complaint, Mr. Dockery alleges that the school district retaliated against him for exercising his First Amendment rights; in Count II, Mr. Dockery alleges that the school district and Dr. Yoho discharged him because of his race in violation of § 1981; in Count III, Mr. Dockery alleges that the school district discharged him in retaliation for opposing sexual harassment in violation of Title VII; in Count IV, Mr. and Mrs. Dockery, on behalf of K.C.D., allege that the school district failed to provide K.C.D. with a nondiscriminatory educational environment in violation of Title VI; in Count V, Mr. and Mrs.

Dockery, on behalf of K.C.D., allege that the school district deprived K.C.D. of his Constitutional and statutory rights to a nondiscriminatory educational environment in violation of § 1983; and, in Count VI, Mr. and Mrs. Dockery, on behalf of K.C.D., allege that because of his race, K.C.D. was subjected to a hostile educational environment, which threatened his personal security and denied him the benefits of a program receiving federal financial assistance in violation of § 1981.  This matter is now before the court on defendants' motion to dismiss all counts (Doc. # 13).

The court grants the school district's motion to dismiss Count I because Mr. Dockery has not alleged the existence of a municipal policy or custom that caused an injury. The court finds that Count II and Count VI have pleading defects as § 1983 offers the exclusive remedy for damages against a state actor for claims arising under § 1981, but the court grants plaintiffs leave to amend their complaint so that they may allege their § 1981 claim, to the extent that they allege municipal liability, under § 1983.  Also, the court grants Mr. Dockery leave to amend Count II of the first amended complaint to allege what clearly establish law Dr. Yoho allededly violated. The court dismisses Count III of the first amended complaint because Mr. Dockery did not have a reasonable good faith belief that he was the victim of sexual harassment.  Also, the court must dismisses Count IV and Count V, as they are barred by the statue of limitations.

**I.     Background**[1]

Mr. Dockery is an African American who was hired as a custodian by the school district in 2002. While Mr. Dockery was employed by the school district, Mr. and Mrs. Dockery's children, including K.C.D., attended the elementary and intermediate schools in the school district. On multiple occasions, as a student, K.C.D. was subjected to racial epitaphs and slurs and was physically attacked by other students while on school grounds, on the bus, and at the bus stop.

On or about December 9, 2002, Mr. Dockery called Dr. John S. Hetlinger, the superintendent of the school district, to express his concerns regarding the racial bullying and harassment of his children at bus stops and school buildings, and Mr. Dockery also expressed concern regarding the lack of response by school officials to the racial bullying and harassment of his children. A series of letter were exchanged between Mr. and Mrs. Dockery and Dr. Hetlinger between December 9, 2002 and February 9, 2004, but Mr. and Mrs. Dockery were not satisfied with the resolution.

Mr. Dockery also alleges that on or about August 15, 2003, he was cleaning the classroom of Nikki Lovell, a graphic arts and photography teacher at the Gardner- Edgerton High School, and Ms. Lovell was playing a movie containing a scene involving sexual activity

---

[1] The court accepts as true all well-pleaded facts as required by the standard for a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

that Mr. Dockery found to be found inappropriate and offensive. A few days later, Ms. Lowell began complaining about Mr. Dockery's poor work performance to his supervisors.

On February 19, 2004, Mr. Dockery met with Dr. Yoho and other school administrators, including Paul Middleton, Mr. Dockery's second-line supervisor. In this meeting Mr. Dockery attempted to initiate a written complaint of sexual harassment and retaliation against Ms. Lovell, but Dr. Yoho would not accept plaintiff's complaint, as he did not believe that Ms. Lovell's conduct constituted sexual harassment or a pattern of retaliation. On February 23, 2004, Mr. Dockery mailed Dr. Yoho the written complaint that had been refused during the February 19, 2004 meeting.

On March 2, 2004, Mr. Middleton and Victor Fonesca, Mr. Dockery's first-line supervisor, met with Mr. Dockery regarding his time record for his work during the last two weeks of February 2004, and Mr. Middleton noted that Mr. Dockery's time record indicated that he worked on February 21, 2004, a Saturday. Mr. Dockery acknowledged that he had not worked of February 21, but stated that the entry was an inadvertent mistake. Mr. Dockery then removed the entry from his time record at Mr. Middleton's instruction, and Mr. Middleton signed the corrected time record.

On March 5, 2004, Mr. Dockery was summoned to a meeting with Dr. Yoho and several other school administrators, including Mr. Middleton, where Mr. Dockery was informed by Dr. Yoho that his employment was being terminated because he had falsified his time record. Mr. Dockery attempted to appeal his discharge, sending written complaints to Mr. Middleton and Dr. Hetlinger on March 13, 2004 and March 31, 2004, respectively. Neither Mr.

Middleton nor Dr. Hetlinger responded to Mr. Dockery's complaints. On May 5, 2004, Mr. Dockery sent a letter to each member of the school board of the school district describing why his discharge was not justified and seeking relief, but none of the board members responded to his letter.

Mr. Dockery then filed his complaint on February 15, 2005, seeking redress for himself, and the first amended complaint was filed on April 22, 2005, so that Mr. and Mrs. Dockery could purse claims of behalf of K.C.D.

## II.   Standard

The court will dismiss a cause of action for failure to state a claim only when "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his [or her] claims which would entitle him [or her] to relief," *Aspenwood Investment Co. v. Martinez*, 355 F.3d 1256, 1259 (10th Cir. 2004) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)), or when an issue of law is dispositive. *Neitzke v. Williams*, 490 U.S. 319, 326 (1989). The court accepts as true all well-pleaded facts, as distinguished from conclusory allegations, and all reasonable inferences from those facts are viewed in favor of the plaintiff. *Adams v. Kinder-Morgan, Inc.,* 340 F.3d 1083, 1088 (10th Cir. 2003). The issue in resolving a motion such as this is "not whether [the] plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

### III.   Analysis

Defendants move for dismissal of the first amended complaint in its entirety. Defendants move to dismiss Count I because Mr. Dockery did not allege that the school district had a policy or custom that caused him to be fired for opposing the racial bullying and harassment of his children. Defendants move to dismiss Count II and Count VI because the claim is brought under § 1981 when it can only be brought under § 1983, and because Dr. Yoho is entitled to qualified immunity. Defendants move to dismiss Count III because Mr. Dockery did not have a reasonable good faith belief that he was the victim of sexual discrimination. Defendants also move to dismiss Count IV and Count V because they are barred by the statute of limitations.

The court grants defendants motion to dismiss Count I, Count II, Count IV and Count V, and the Court grants plaintiffs leave to amend Count II and Count VI.

### A.   Retaliatory Discharge (Count I)

In Count I of the first amended complaint, Mr. Dockery alleges that he exercised his right to free speech by speaking out on a matter of public concern, specifically, racial bullying and harassment of his children, and Mr. Dockery alleges that he was discharged as a result. A government employer may not, as a condition of employment, compel an employee to relinquish carte blanche his First Amendment right to comment on matters of public concern. *See Pickering v. Board of Educ.,* 391 U.S. 563, 568 (1968); *Woodward v. City of Worland,* 977 F.2d 1392, 1403 (10th Cir. 1992). An employer, however, is not constrained from altering an employee's conditions of employment for legitimate reasons. To prevail on a claim of

retaliation in the free speech context, an employee must establish: (1) the speech involved a matter of public concern, (2) the employee's interest in engaging in the speech outweighed the employer's interest in regulating the speech, and (3) the speech was a "substantial motivating factor" behind the employer's decision to take an adverse employment action against the employee. *See Baca v. Sklar,* 398 F.3d 1210, 1218-19 (10th Cir.2005); *see also Mount Healthy City Sch. Dist. v. Doyle,* 429 U.S. 274, 287(1977) (equating "substantial" factor with "motivating" factor).

Mr. Dockery has brought this claim only against the school district and, in that connection he has failed to allege facts that would establish liability against that governmental unit.  For a plaintiff to establish liability against the school district, as a quasi-municipal agency, he or she "must show 1) the existence of a municipal policy or custom, and 2) that there is a direct causal link between the policy or custom and the injury alleged." *Hinton v. City of Elwood,* 997 F.2d 774, 782 (10th Cir.1993).  Mr. Dockery has not alleged the existence of a municipal policy or custom that caused an injury, and therefore, the court must dismiss his claim in Count I of the first amended complaint.[2]

---

[2] While the court has not decided whether or not Mr. Dockery was speaking on a matter of public concern, the court notes that the Supreme Court in *Connick v. Myers,* 461 U.S. 138, 148 n. 8 (1983), noted that the protest of racial discrimination (which could apply to racial harassment) is inherently of public concern, even when the protest is in a private forum as in *Givhan v. Western Line Consol. School Dist.,* 439 U.S. 410 (1979).  By contrast, the Tenth Circuit in *Woodward v. City of Worland*, arguably took a more restrictive position when the protest is of sexual harassment. 977 F.2d 1392, 1404 (1992).

### B.      Claims Arising under § 1981 (Count II and Count VI)

In Count II of the Amended Complaint, Mr. Dockery alleges that for Dr. Yoho and the school district, Mr. Dockery's race was a motivating factor in his discharge, and in Count VI, Mr. Dockery, on behalf of K.C.D., alleges that the school district subjected K.C.D. to a hostile educational environment that threatened his personal security, denying him the benefits of a program receiving federal financial assistance.   Both claims are brought under § 1981. Defendants argue that both claims must be dismissed as they are brought under § 1981 but § 1983 offers the exclusive remedy for pursing damages against a state actor for claims arising under § 1981.

In *Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701, 735 (1989), the Supreme Court ruled that "the express 'action at law' provided by § 1983 for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws,' provides for the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor." This ruling clearly states that § 1983 is the sole means for a plaintiff to pursue her § 1981 claim against a municipality. However, some courts have found that the Civil Rights Act of 1991 overruled *Jett*. The Civil Rights Act of 1991 amended § 1981 by adding subsection (c), which expressly provided recovery for violations of § 1981(a) "under color of state law."  This language, mirrors language in § 1983 and has led many courts to opine that since Congress borrowed the language from § 1983, Congress "presumably intended to borrow also the rules of municipal liability under § 1983." *Gallardo v. Board of County Comm'rs,* 857 F.Supp. 783, 787 (D. Kan.1994). *See also, La Compania Ocho, Inc. v. U.S.*

*Forest Serv.,* 874 F. Supp. 1242, 1250 (D.N.M.1995); *Morris v. Kansas Dept. of Revenue,* 849 F. Supp. 1421, 1426 (D. Kan.1994); *Arnett v. Davis County Sch. Dist.,* 1993 WL 434053 at *5 (D. Utah Apr. 5, 1993); *Ford v. City of Rockford,* 1992 WL 309603 (N.D. Ill. Oct.15, 1992); *Robinson v. Town of Colonie,* 878 F. Supp. 387, 405 (N.D.N.Y.1995).

Plaintiffs argue that the Tenth Circuit has also adopted the view that the Civil Rights Act of 1991 amended § 1981 to allow claims to be brought alleging damages against a state actor, citing *Salguero v. City of Clovis*, 366 F.3d 1168 (10th Cir. 2004). However, the court in *Salguero* did not even mention the *Jett* pleading issue but instead analyzed the plaintiff's § 1981 and § 1983 claims under the *McDonnel Douglas* burden shifting analysis to determine whether the trial court properly granted summary judgment.

The court believes that when Congress added subsection (c), it did not intend to overrule *Jett*. *See Sims v. Unified Gov't of Wyandotte County/Kan. City, Kan.,* 120 F. Supp.2d 938, 953 (D. Kan.2000) (this court held that subsection (c) does not overrule *Jett*). This interpretation is held by a number of other courts. *See Stewart v. Bd. of Comm'rs for Shawnee County, Kan.,* 216 F.R.D. 662, 663 (D. Kan.2003) (Judge Julie A. Robinson); *Burns v. Bd. of Comm'rs of County of Jackson,* 197 F. Supp.2d 1278, 1296 (D. Kan.2002) (Judge Sam A. Crow); *see also Oden v. Oktibbeha County,* 246 F.3d 458, 462-64 (5th Cir.), *cert. denied* 534 U.S. 948 (2001) ( *Jett* not overruled by 1991 amendments); *Butts v. County of Volusia,* 222 F.3d 891, 894 (11th Cir.2000) (same); *Dennis v. County of Fairfax,* 55 F.3d 151, 156 n. 1 (4th Cir.1995) (same); *see also Wright v. N.C. Dep't of Corr.,* 2000 WL 683160, at *17 (M.D.N.C. March 17, 2000); *McPhaul v. Bd. of Comm'rs,* 976 F. Supp. 1190,

1192-93 (S.D. Ind.1997); *Johnakin v. City of Philadelphia,* 1996 WL 18821, at *3-4 (E.D. Pa. Jan.18, 1996); *Ebrahimi v. City of Huntsville,* 905 F. Supp. 993, 995 (N.D. Ala.1995) ( *Jett* not overruled by subsection (c) of § 1981); *Johnson v. City of Fort Lauderdale,* 903 F.Supp. 1520, 1523 (S.D. Fl.1995) (Subsection(c) intended to codify *Runyon v. McCrary,* 427 U.S. 160, (1976), not create cause of action that did not previously exist).

This view is supported by the fact that "[a]t no time in either the official summaries or in floor debate surrounding the enactment of subsection(c) did any congressperson mention *Jett* or the scope of municipal liability under Section 1981." *Philippeaux v. N. Cent. Bronx Hosp.,* 871 F. Supp. 640, 655 (S.D.N.Y.1994).The legislative history of the Civil Rights Act of 1991 mentions subsection (c) only briefly, and states only that subsection(c) was added to reaffirm *Runyon,* 427 U.S. 160, which held that Section 1981 applied to nongovernmental entities. *Id.* As noted by many courts, it would be illogical to conclude that Congress overturned *Jett* by implication, while expressly codifying *Runyon. See Dennis,* 55 F.3d at 156; *Wright,* 2000 WL 683160, at *17; *McPhaul,* 976 F.Supp. at 1192-93; *Johnakin,* 1996 WL 18821, at *3-4; *Ebrahimi,* 905 F.Supp. at 995; *Johnson,* 903 F.Supp. at 1523.

The court, therefore, finds that Count II and Count VI have pleading defects, as § 1983 offers the exclusive remedy for damages against a state actor for claims arising under § 1981. The court grants plaintiffs leave to amend Count II and Count VI of the first amended complaint so that the claims alleged under § 1981, to the extent that they allege municipal liability, may be brought under § 1983. *See* Fed. R. Civ. P. 15(a) (leave to amend shall be freely given when justice so requires, unless the amendment would be futile).

10

### C. Qualified Immunity for Dr. Yoho (Count II)

Dr. Yoho also argues that Count II of the first amended complaint must be dismissed against him, as he is entitled to qualified immunity. Qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." *Holland ex rel. Overdorff v. Harrington,* 268 F.3d 1179, 1185 (10th Cir. 2001).

Once a defendant asserts a qualified immunity defense, the court employs a two-part test. Under the first of the two-part qualified immunity test, the court must determine whether the facts alleged by a plaintiff, taken in the light most favorable to him or her, show that the conduct of a defendant violated a constitutional right. *Hope v. Pelzer,* 536 U.S. 730, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) (citing *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). If a plaintiff fails to meet the threshold burden of demonstrating a constitutional violation, "there is no necessity for further inquiries concerning qualified immunity." *Saucier,* 533 U.S. at 201. If, on the other hand, a plaintiff's factual allegations amount to a violation of a constitutional right, "the next, sequential step is to ask whether the right was clearly established at the time of the defendant's unlawful conduct such that a reasonable person in the defendant's position would have known that the alleged conduct violated the federal right." *Id.*

In his first amended complaint, Mr. Dockery failed to allege that Dr. Yoho individually engaged in conduct that violated clearly established law. Mr. Dockery now asks for leave to amend his first amended complaint, citing *Sims v. Unified Gov't of Wyandotte County/Kan.*

11

*City, Kan.,* 120 F. Supp.2d 938, 946 (D. Kan.2000), where the court stated that "once the defense [of qualified immunity] has been raised, the court must allow the plaintiff the limited opportunity . . . to come forward with facts or allegations sufficient to show both that the defendant's alleged conduct violated the law and that the law was clearly established when the alleged violation occurred." This case, however, took place under a heightened pleading requirement formerly in place in the Tenth Circuit in cases where there was a qualified immunity defense, and the Tenth Circuit expressly stated in *Currier v. Doran*, 242 F.3d 905 (10th Cir. 2001) that such a standard is no longer permissible as a result of *Crawford-El v. Britton*, 523 U.S. 574 (1998). As heightened pleading is no longer required, the rationale of *Sims* may be undercut. Nonetheless, under all the facts and circumstance of this case and considering that a plaintiff ought to be afforded an opportunity to test his claim on the merits if the underlying facts and circumstances may be a proper subject of relief, *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962),the court concludes that Mr. Dockery should be given an opportunity to amend his complaint. *See* Fed. R. Civ. P. 15(a) (leave to amend shall be freely given when justice so requires, unless the amendment would be futile).

### D.  Good Faith Belief (Count III)

In Count III of the first amended complaint, Mr. Dockery alleges that the school district intentionally retaliated against him for opposing what be believed in good faith to be sexual harassment, which is an actionable form of discrimination because of sex,  and retaliation by Ms. Nikki Lovell.

12

When there is not direct evidence, a prima facie case of retaliation under Title VII requires a plaintiff to show that (1) he or she engaged in protected opposition to discrimination; (2) he or she was subjected to adverse employment action by the employer; and (3) a causal connection exists between the protected activity and the adverse action. *See McCue v. Kansas, Dep't. of Human Resources,* 165 F.3d 784, 789 (10th Cir.1999). To engage in protected opposition to discrimination, a plaintiff must have a reasonable good faith belief that he or she was opposing discrimination. *Zinn v. McKune,* 143 F.3d 1353, 1362 (10th Cir.1998). This test has both an objective and subjective element. *See Id.* (citing *Dey v. Colt Constr. Develpment Co.,* 28 F.3d 1446, 1457 (7th Cir. 1994)). However, a plaintiff's opposition could be protected even if he or she was wrong about whether the alleged conduct in fact violated Title VII, as it is enough if a plaintiff had a good faith belief that Title VII had been violated. *Love v. RE/MAX of Am., Inc.,* 738 F.2d 383, 385 (10th Cir.1984).

Defendants move to dismiss Count III, arguing that Mr. Dockery did not have a *reasonable*, good faith belief that he was the victim of sexual harassment. To raise an actionable claim for sexual harassment under Title VII, the harassment must be "so severe or pervasive as to alter the conditions of [the victim's] employment and create an abusive working environment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 786 (1998) (internal quotations omitted). To determine if an environment is sufficiently hostile under this standard, the court must look at the totality of circumstances, paying special attention to the frequency of discriminatory conduct, severity of discriminatory conduct, whether the conduct is physically threatening or humiliating, or a "mere offensive utterance," and whether the conduct

unreasonably interferes with the employee's work performance. *Clark County Sch. Dist. v. Breeden*, 532 U.S. 270-71 (2001) (per curiam). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.' " *Id.* (quoting *Faragher*, 524 U.S. at 788.

Defendants argue that Mr. Dockery was subjected to one incident and therefore, he did not have a reasonable, good faith belief that he was the victim of sexual harassment. The court agrees. Here, Mr. Dockery encountered an isolated incident, the viewing of a movie that contained a scene involving sexual activity. This one incident falls far short of the circumstance in which the Tenth Circuit has found sexual discrimination based upon a single incident. *See Turnbull v. Topeka State Hosp.*, 255 F.3d 1238, 1243-44 (10th Cir. 2001) (approving jury's finding that plaintiff was subjected to a sexually hostile work environment when subject to a single sexual assault); *Hicks v. Gates Rubber Co.,* 833 F.2d 1406, 1414 (10th Cir. 1987) (isolated manifestations of a discriminatory environment are not sufficient to demonstrate a hostile working environment); *Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1366 (10th Cir.1997) (five separate incidents perpetrated by plaintiff's supervisor, although "unpleasant and boorish," were not sufficiently severe or pervasive to create an actionable hostile work environment). The Supreme Court and the Tenth Circuit have stated that courts should filter cases involving isolated incidents unless the isolated incident is extremely serious. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998); *Mackenzie v. City and Country of Denver*, 414 F.3d 1266 (10th Cir. 2005). The court therefore finds that

14

Mr. Dockery did not have a reasonable good faith belief that he was the victim of sexual harassment, and it dismisses Count III of the first amended complaint.

### E.  Statute of Limitations (Count IV and Count V)

Defendants argue that Counts IV and V are barred by the statute of limitation, as two years have passed since plaintiffs knew of the conduct complained of in this action. It is well-settled that state statutes of limitations applicable to general personal injury claims supply the limitations period for Title VI and § 1983 claims. *Reynolds v. Sch. Dist. No. 1*, 69 F.3d 1523, 1533 n.12 (10th Cir. 1995); *Laurino v. Tate*, 220 F.3d 1213, 1218 (10th Cir. 2000). Here, the Kansas two year statute of limitations applies to the Title VI and § 1983 claims of discrimination presented in Counts IV and V, *Laurino*, 220 F.3d at 1218, and these claims accrued under federal law when the plaintiff know or should have know about them. *Baker v. Bd. of Regents*, 991 F.2d 628, 632 (10th Cir. 1993) (citations omitted).

Plaintiffs do not argue that they have brought suit within two years of discovering a violation of constitutional rights, as plaintiffs were aware of the alleged violations as of December 9, 2002, but did not bring suit until April 22, 2005 when plaintiffs filed their first amended complaint. However, plaintiffs argue that these claims are not barred because of K.S.A 60-515(a), which tolls the statute of limitations for minors, allowing a minor to bring suit one year after reaching the age of eighteen, and the claims at issue are brought on behalf of K.C.D., who is ten years old. Plaintiffs also note that in Kansas, a minor is not entitled to bring a lawsuit in his or her own name, but rather, such cause of action must be commenced

15

by a guardian or "next friend" who is an adult. K.S.A. 60-217. *Bonin v. Vannaman*, 929 P.2d 754 (Kan. 1996).

Plaintiffs miss the purpose of K.S.A 60-515(a). "The purpose of K.S.A. 60-515... is to mitigate the difficulties of preparing and maintaining a civil suit while the plaintiff is under a legal disability." *Britz v. Williams*, 262 Kan. 769, 774 (1997) (*citing Lewis v. Shuck,* 5 Kan.App.2d 649, 651, 623 P.2d 520, *rev. denied* 229 Kan. 670 (1981). The statute does not suspend, interrupt, or extend the statute of limitations, but merely tolls the statute of limitations under stated circumstances. *Id.* As the statue of limitations has run for K.C.D.'s guardians to bring a claim on his behalf, the court must dismiss Counts IV and V of the first amended complaint.[3]

## IV. Conclusion

The court grants the school district's motion to dismiss Count I because Mr. Dockery has not alleged the existence of a municipal policy or custom that caused an injury. The court finds that Count II and Count VI have pleading defects, as § 1983 offers the exclusive remedy for damages against a state actor for claims arising under § 1981, but the court grants plaintiffs leave to amend their complaint so that they may allege their § 1981 claims, to the extent that they allege municipal liability, under § 1983. Also, the court grants Mr. Dockery leave to amend Count II of the first amended complaint to allege what clearly establish law Dr. Yoho

---

[3] K.C.D., however, may bring a claim between his eighteenth and nineteenth birthday in his own name.

allegedly violated. The Court dismisses Count III of the first amended complaint because Mr. Dockery did not have a reasonable good faith belief that he was the victim of sexual harassment.  Also, the court must dismiss Count IV and Count V, as they are barred by the statue of limitations.

**IT IS THEREFORE ORDERED BY THE COURT** that defendants' motion to dismiss Count I, Count III, Count IV and Count V is granted.

**IT IS FURTHER ORDERED** that plaintiffs may amend Count II and Count VI of their complaint to allege their § 1981 claim under § 1983, to the extent that they allege municipal liability, by August 30, 2005.  Also, no later than August 30, 2005, Mr. Dockery may amend Count II of the first amended complaint to allege what clearly established law Dr. Yoho violated.  If plaintiffs fail to do so, any unamended counts shall be subject to immediate dismissal.

**IT IS SO ORDERED** this 12th day of August, 2005.

s/ John W. Lungstrum  
John W. Lungstrum  
United States District Judge
