## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**REGINALD J. DOCKERY, et al.,**

        **Plaintiffs,**

        **v.**                        **Case No.  05-2067-JWL**

**UNIFIED SCHOOL DISTRICT NO. 231**
**and TIM YOHO,**

        **Defendants.**
_____

### MEMORANDUM AND ORDER

Plaintiff Reginald Dockery on his own behalf and in his capacity, along with plaintiff Rebekah Dockery, as guardians of their minor son K.C.D., brought this lawsuit against defendants Unified School District No. 231 and Tim Yoho, the school district's director of human resources, asserting various employment and racial discrimination claims. This matter is before the court on Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint (Doc. 42) and Plaintiffs' Motion for Leave to File a Third Amended Complaint (Doc. 38). For the reasons explained below, the court will deny defendants' motion to dismiss and grant plaintiffs' motion for leave.

# BACKGROUND[1]

Plaintiffs' second amended complaint alleges that Mr. Dockery, who is African American, was formerly employed as a custodian for the school district. His son, K.C.D., is ten years old and is also African American. K.C.D. formerly attended elementary and intermediate school in the school district. While attending school there, K.C.D. was continually subjected to racial epitaphs and slurs when other students called him "nigger," "monkey," "brownie," and "coco puff" while on school grounds, on the bus, and at the bus stop. He also was attacked physically by other students while on school grounds, on the bus, and at the bus stop on multiple occasions.

On or about December 9, 2002, Mr. Dockery called John S. Hetlinger, the school district superintendent, to express his concerns regarding the racial bullying and harassment of his children at bus stops and in school buildings, and the lack of response by school officials to the racial bullying and harassment of his children. That same day, Dr. Hetlinger sent a letter to Mr. Dockery regarding his concerns. A copy of Dr. Hetlinger's letter was sent to the members of the school district's board of education. On or about March 31, 2003, Mr. and Mrs. Dockery sent a letter to Dr. Hetlinger, again expressing similar concerns as well as concerns about school officials' racial intolerance of their children. Dr. Hetlinger responded by way of a letter dated April 2, 2003, which again was sent to members of the board of

---

[1] Consistent with the well established standard for evaluating a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court accepts as true all well pleaded factual allegations in plaintiffs' complaint.

education.  On February 5, 2004, Mr. Dockery sent yet another letter to Dr. Hetlinger.  This letter included a description of eleven specific incidents of harassment.  Dr. Hetlinger responded by way of a letter dated February 9, 2004, which again was sent to members of the board of education.  The board never initiated an investigation or took any remedial action concerning any of Mr. and Mrs. Dockery's complaints.

On March 2, 2004, Mr. Dockery met with his supervisors, Victor Fonesca and Paul Middleton, concerning his work time record during the last two weeks of February of 2004.  Mr. Middleton pointed out that plaintiff's time record erroneously indicated that he worked on February 20, 2004.  Mr. Dockery acknowledged that he had not worked on that day and stated that the entry was an inadvertent mistake.  Mr. Middleton instructed Mr. Dockery to white out the entry and Mr. Dockery did so.  On March 5, 2004, Mr. Dockery met with other school administrators including Mr. Middleton and defendant Tim Yoho, the school district's director of human resources.  Mr. Yoho informed Mr. Dockery that his employment was being terminated because he had intentionally falsified his time record.  Mr. Dockery attempted to appeal his discharge by sending written complaints to Mr. Middleton on March 13, 2004, to Dr. Hetlinger on March 31, 2004, and to the board of education on May 5, 2004.  Mr. Dockery received no response.

Based on these allegations, plaintiffs' second amended complaint asserts two causes of action.  Count I is a claim by Mr. Dockery against both the school district and Mr. Yoho for racially discriminatory discharge in violation of 42 U.S.C. §§ 1981, 1983.  Count II is a claim by K.C.D. against the school district for a racially hostile educational environment in violation

3

of 42 U.S.C. §§ 1981, 1983.  Plaintiffs also seek to amend their complaint to assert a § 1983 claim by Mr. Dockery against the school district for retaliatory discharge in violation of his First Amendment free speech rights.  Defendants now ask the court to dismiss both of the claims in plaintiffs' second amended complaint.  Defendants also ask the court to deny plaintiffs' motion to amend their complaint because, defendants contend, the amendment would be futile.

## STANDARD FOR A MOTION TO DISMISS AND
## FOR EVALUATING A MOTION TO AMEND ON GROUNDS OF FUTILITY

With respect to plaintiffs' motion to amend, the Federal Rules of Civil Procedure provide that a party may amend his or her pleading once as a matter of course or, after a responsive pleading has been filed, "only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a).  The decision whether to grant leave to amend is within the discretion of the district court.  *Hayes v. Whitman*, 264 F.3d 1017, 1026 (10th Cir. 2001).  The court may justifiably refuse leave to amend on the grounds of undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or futility of the proposed amendment.  *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993).  A motion to amend may be denied as futile "if the proposed amendment could not have withstood a motion to dismiss or otherwise failed to state a claim."  *Schepp v. Fremont County*, 900 F.2d 1448, 1451 (10th Cir. 1990).  Both plaintiffs' motion to amend and

defendants' motion to dismiss, then, are governed by the standard for a motion to dismiss for failure to state a claim upon which relief can be granted.

The court will dismiss a cause of action for failure to state a claim only when "'it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief,'" *Beedle v. Wilson*, 422 F.3d 1059, 1063 (10th Cir. 2005) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)), or when an issue of law is dispositive, *Neitzke v. Williams*, 490 U.S. 319, 326 (1989).   The court accepts as true all well-pleaded facts, as distinguished from conclusory allegations, and all reasonable inferences from those facts are viewed in favor of the plaintiff.   *Beedle*, 422 F.3d at 1063.   The issue in resolving such a motion is "not whether [the] plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quotation omitted); *Beedle*, 422 F.3d at 1063.


## DISCUSSION

For the reasons explained below, the court finds that plaintiffs' second amended complaint adequately states a claim for racially discriminatory discharge and racially hostile educational environment because the complaint places defendants on notice of the fact that plaintiffs are seeking relief under § 1983, and it also contains sufficient allegations of discriminatory motive to overcome Mr. Yoho's claim of qualified immunity at this procedural juncture.   The court also finds that it would not be futile to allow plaintiffs to amend their complaint to assert a claim for retaliatory discharge because plaintiffs' proposed third

amended complaint adequately alleges that a municipal policy caused the alleged constitutional violation—namely, that Mr. Yoho acted with final policymaking authority with respect to the decision to discharge Mr. Dockery—and it also adequately alleges that Mr. Dockery's complaints about the racial bullying and harassment of his children constituted a matter of public concern.

## I.     Mr. Dockery's Racially Discriminatory Discharge Claim

Defendants urge the court to dismiss Mr. Dockery's discriminatory discharge claim on two grounds.  First, they contend that Mr. Dockery improperly failed to plead that this claim is based on § 1981 "under" § 1983.  This argument is based on language contained in the court's Memorandum and Order issued on August 12, 2005.  Previously, Mr. Dockery brought this claim only under § 1981.  The court held that he pleaded this claim defectively because § 1983 offers the exclusive remedy for damages against a state actor for claims arising under § 1981, and the court granted plaintiffs leave to amend this claim so that it could "be brought under § 1983."  *Dockery v. Unified Sch. Dist. No. 231*, 382 F. Supp. 2d 1234, 1241 (D. Kan. 2005).  Subsequently, plaintiffs filed a second amended complaint which pleads this claim as a violation of § 1981 "and" § 1983 rather than a violation of § 1981 "under" § 1983.  The court finds defendants' argument that the court should dismiss this claim solely for that reason to be without merit in light of the liberal notice pleading standards of the Federal Rules of Civil Procedure.  It is well established that § 1983 "creates no substantive rights, but rather creates only a remedy against those who, acting under color of law, violate rights secured by federal statutory or constitutional law."  *Ramirez v. Dep't of Corrections*, 222 F.3d 1238, 1243 (10th

Cir. 2000).   Here, then, § 1981 creates the statutory right for Mr. Dockery's discriminatory discharge claim and § 1983 provides the exclusive remedy for the alleged violation of his statutory right.   The claim as currently pleaded adequately places defendants on notice of the nature of Mr. Dockery's claim against them.

Defendants' second argument with respect to this claim is that Mr. Dockery has failed to allege facts sufficient to overcome Mr. Yoho's claim of qualified immunity.   In evaluating Mr. Yoho's claim of qualified immunity, the court conducts a two-part inquiry.   First, the court determines whether his actions, as alleged in the complaint, violated a constitutional or statutory right.   *Denver Justice & Peace Comm., Inc. v. City of Golden*, 405 F.3d 923, 927 (10th Cir.) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)), *petition for cert. filed*, No. 03-1470 (Sept. 26, 2005).   If so, then the court "must determine whether the right allegedly violated has been 'clearly established in a more particularized, and hence more relevant sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Id.* (quoting *Saucier*, 533 U.S. at 201).

Plaintiffs have adequately alleged that Mr. Yoho's actions violated Mr. Dockery's statutory right under § 1981.   Section 1981 provides that all persons "shall have the same right . . . to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens."   42 U.S.C. § 1981(a).   The term "make and enforce contracts" includes "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."   *Id.* § 1981(b).

7

Section 1981, then, "forbids all intentional racial discrimination in the making or enforcement of private or public contracts." *Exum v. United States Olympic Comm.*, 389 F.3d 1130, 1134 (10th Cir. 2004) (citing *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 609 (1987), and *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 295 (1976)). "In particular, § 1981 protects employees from racial discrimination both in entering into an employment contract and in enjoying the benefits, privileges, terms and conditions of employment." *Id.* In this case, plaintiffs' second amended complaint alleges that Mr. Dockery's race was a motivating factor in Mr. Yoho's decision to discharge Mr. Dockery. *See* Second Am. Compl. (Doc. 34), ¶ 24, at 5. Accepting this allegation as true, Mr. Yoho's actions violated Mr. Dockery's statutory rights under § 1981. Thus, plaintiffs' complaint sufficiently alleges a statutory violation.

Moreover, this right is clearly established in the sense that any reasonable official who discharges an employee on the basis of his or her race would understand that doing so violates the employee's rights under § 1981. *See Ramirez*, 222 F.3d at 1244 (holding the district court properly denied the defendant's Rule 12(c) motion for qualified immunity because the law is clearly established that racial discrimination in employment violates § 1981). This court does not apply a heightened pleading standard in evaluating allegations of motive when the qualified immunity defense is raised in a motion to dismiss. *Currier v. Doran*, 242 F.3d 905, 916-17 (10th Cir. 2001). The Federal Rules of Civil Procedure require only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Mr. Dockery has complied with this requirement by providing Mr. Yoho with fair notice of the basis for his claim—namely, that Mr. Yoho knew his accusation that Mr. Dockery had falsified

his time record was not true, *see* Second Am. Compl., ¶ 20, at 5, thus implying that the real reason for his discharge must have been something else, apparently Mr. Dockery's race, *see id.* ¶ 26, at 6 (alleging that Mr. Yoho discharged Mr. Dockery "with a racially discriminatory purpose").   Based on these allegations, the court is unable to conclude that it appears beyond a doubt that Mr. Dockery can prove no set of facts from which a rational trier of fact could find that Mr. Yoho's motive for the discharge was Mr. Dockery's race.   Thus, Mr. Yoho's claim of qualified immunity fails at this procedural juncture.   Of course, Mr. Yoho remains free to test these allegations in light of facts revealed during discovery on a motion for summary judgment.   *See, e.g.*, *Ramirez*, 222 F.3d at 1244 (noting that the court expressed no view as to the plaintiffs' ability to prove their allegations of racial discrimination and that the defendant remained free to raise the issue of qualified immunity on a motion for summary judgment once discovery was completed).

This same claim is alleged in Count II of plaintiffs' proposed third amended complaint. For the same reasons that defendants' motion to dismiss is denied with respect to this claim in plaintiffs' second amended complaint, the court rejects defendants' futility argument with respect to this claim as it is contained in plaintiffs' proposed third amended complaint.

## II.    K.C.D.'s Racially Hostile Educational Environment Claim

Count II of plaintiffs' second amended complaint claims that the school district discriminated against K.C.D. by subjecting him to a racially hostile educational environment as the result of a policy of the school district because the school board was aware of the racial bullying and harassment of K.C.D. but failed to initiate any investigation into Mr. and Mrs.

Dockery's allegations and failed to take any reasonable remedial action. The school district argues that this claim should be dismissed because plaintiffs failed to properly plead their claim based on 42 U.S.C. § 1981 "under" 42 U.S.C. § 1983. For the same reasons as explained above with respect to Mr. Dockery's discriminatory discharge claim, the court finds that the claim as currently pleaded adequately places the school district on notice of the nature of K.C.D.'s claim against it.

This same claim is alleged in Count III of plaintiffs' proposed third amended complaint. For the same reason that defendants' motion to dismiss is denied with respect to this claim in plaintiffs' second amended complaint, the court rejects defendants' futility argument with respect to this claim as it is contained in plaintiffs' proposed third amended complaint.

## III.  Mr. Dockery's Retaliatory Discharge Claim

Plaintiffs seek leave to amend their complaint to allow Mr. Dockery to assert a claim of retaliatory discharge based on the school district's alleged violation of his First Amendment free speech rights. Defendants urge the court to deny plaintiffs leave to amend on the grounds that the proposed amendment would be futile for two reasons.

First, they contend that Mr. Dockery has not alleged facts to support a direct causal link between any policy or custom and the injury alleged.[2] In order for the school district to be

---

[2] By way of background, plaintiffs previously asserted a similar claim which the court dismissed because Mr. Dockery had not alleged the existence of a municipal policy or custom that caused the injury. *See Dockery*, 382 F. Supp. 2d at 1239-40. At that time, Mr. Dockery's first amended complaint alleged that the school district violated Mr. Dockery's free speech rights because his exercise of his right of free speech was a motivating factor in his discharge from employment. Mr. Dockery, however, had not alleged a direct causal link between a

held liable on this § 1983 claim, Mr. Dockery must show that the governmental entity's policies caused the constitutional violation.  *Dill v. City of Edmond*, 155 F.3d 1193, 1210-11 (10th Cir. 1998).   Municipal liability attaches where an official "'responsible for establishing final policy with respect to the subject matter in question' makes a 'deliberate choice to follow a course of action . . . from among various alternatives.'" *Id.* (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)).   In this case, plaintiffs' proposed third amended complaint alleges that Mr. Yoho was a final policymaker for purposes of establishing the school district's liability.   It alleges that the retaliatory discharge was the result of school district policy because the school district's board of education delegated its final policymaking authority to discharge employees to Mr. Yoho, and the board of education then approved or ratified Mr. Yoho's decision to discharge Mr. Dockery.   Accepting these allegations as true, Mr. Yoho's decision to discharge Mr. Dockery constituted the school district policy which caused the alleged violation of Mr. Dockery's First Amendment free speech rights. Defendants' related argument that Mr. Dockery "has come forward with no purported facts to show that Dr. Yoho was even *aware* of his complaints regarding the racial bullying and harassment of his children at bus stops and school buildings," *see* Mem. in Opp'n to Pls.' Mot. for Leave to File a Third Am. Compl. (Doc. 44), at 5 (quotation omitted; emphasis in original), is patently without merit.   Plaintiffs' proposed third amended complaint specifically alleges that Mr. Yoho as well as Dr. Hetlinger and members of the board of education were aware of

---

municipal policy or custom and the alleged constitutional deprivation.

Mr. Dockery's complaints about the racial bullying and harassment of his children and school officials' lack of response to this problem. *See* Proposed Third Am. Compl. ¶ 25, at 5-6. Thus, the proposed third amended complaint contains the causal link necessary to establish school district liability. *Cf. Randle v. City of Aurora*, 69 F.3d 441 (10th Cir. 1995) (reversing grant of summary judgment because issues of material fact existed regarding whether particular individuals were final policymakers).

Defendants' second argument with respect to this proposed claim is that Mr. Dockery was not speaking out on a matter of public concern because he was complaining about the racial bullying of *his* children. A public employee asserting a free speech claim must establish, as a threshold matter, that "the speech involves a matter of public concern and not merely a personal issue internal to the workplace." *Moore v. City of Wynnewood*, 57 F.3d 924, 931 (10th Cir. 1995) (citing *Connick v. Myers*, 461 U.S. 138, 146-47 (1983)). A statement is characterized as a matter of public concern rather than merely a personal employment grievance "if it can be 'fairly considered as relating to any matter of political, social, or other concern to the community.'" *Id.* (quoting *Connick*, 461 U.S. at 146). This inquiry requires the court "to consider 'the content, form, and context of a given statement, as revealed by the whole record.'" *Patrick v. Miller*, 953 F.2d 1240, 1247 (10th Cir. 1992) (quoting *Connick*, 461 U.S. at 147-48). In this case, the allegations in plaintiff's complaint do not reveal the factual details concerning what Mr. Dockery said to school officials concerning the alleged racial bullying and harassment of K.C.D. Suffice it to say, however, that based on the allegations in plaintiffs' complaint the court certainly cannot say that it appears

12

beyond a doubt that Mr. Dockery could not prove any set of facts which would entitle him to relief on that claim.  *See Connick*, 461 U.S. at 148 n.8 (describing an employee's protests about racial discrimination as "a matter inherently of public concern"); *see, e.g.*, *Hardeman v. City of Albuquerque*, 377 F.3d 1106, 1113-14 (10th Cir. 2004) (employee's speech which, among other things, pointed out the possible ramifications of what appeared to be racially motivated discriminatory conduct constituted speech on a matter of public concern); *Patrick*, 953 F.2d at 1247 (holding the fact that the plaintiff had intended to assist another employee with a racial discrimination complaint constituted speech on a matter of public concern).

In sum, the school district has offered no argument that persuades the court that allowing plaintiffs to amend their complaint to assert their proposed retaliatory discharge claim would be futile.  Accordingly, plaintiffs' motion for leave to amend is granted.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint (Doc. 42) is denied.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Leave to File a Third Amended Complaint (Doc. 38) is granted.  Plaintiffs shall file their proposed Third Amended Complaint within ten days in accordance with D. Kan. Rule 15.1.

**IT IS SO ORDERED** this 3rd day of January, 2006.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge